UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X   Case No.
MATTHEW J. SHEPS,

          Plaintiff,    **COMPLAINT**

    - against -

AQUEDUCT PLUMBING AND HEATING OF  **PLAINTIFF DEMANDS**
PUTNAM INC. D/B/A AQUEDUCT SERVICES,  **A TRIAL BY JURY**

          Defendant.
------------------------------------------------------------------X

  Plaintiff MATTHEW J. SHEPS ("Plaintiff"), by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, New York State Executive Law § 296 *et seq.* ("NYSHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being subjected to a discriminatory termination by his employer due to his religion/creed (Jewish).

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred therein.

5.  By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 20, 2022; (b) receiving a Notice of Right to Sue from the EEOC on January 18, 2023; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

6.  Plaintiff was and is a resident of the State of New York and County of Westchester.

7.  Plaintiff is an observant Jewish male.

8.  Upon information and belief, Defendant AQUEDUCT PLUMBING AND HEATING OF PUTNAM INC. ("AQUEDUCT") D/B/A AQUEDUCT SERVICES is a domestic business corporation operating in and existing under the laws of the State of New York, with its principal place of business located at 115 Wall Street, Valhalla, New York 10595.

9.  Upon information and belief, Defendant AQUEDUCT employs fifteen or more employees.

10. At all times relevant, Plaintiff was an employee of Defendant AQUEDUCT.

11. Defendant AQUEDUCT is an employer within the meaning of Title VII and the NYSHRL.

## MATERIAL FACTS

12. Plaintiff SHEPS applied for an "HVAC Installer" position with Defendant AQUEDUCT, listed on Indeed.com, on or around February 21, 2022, and was invited to interview via Zoom with AQUEDUCT's President, Daniel Grieco, and Debra Grieco, Operations Manager, on or around February 22, 2022.

13. Plaintiff SHEPS expressed clearly during his initial interview with Mr. Grieco and Ms. Grieco, that he was an HVAC Installer, not a service technician or plumber, and should be

2

onboarded as an HVAC Installer, if they decided to hire him.

14. Mr. Grieco and Ms. Grieco stated they understood Plaintiff SHEPS' qualifications and that would not be an issue.

15. They added that Defendant AQUEDUCT needed an HVAC Installer since, at the time, there was only one HVAC Installer working for Defendant.

16. Mr. Grieco and Ms. Grieco also stated that Plaintiff SHEPS would nevertheless receive training as a plumber, and Plaintiff expressed interest in receiving this training.

17. Mr. Grieco and Ms. Grieco then informed Plaintiff SHEPS that he would need to obtain EPA 608 "Type I and Type II" certifications for the role, but that otherwise his knowledge base and expertise were up to par with the position, and his employment offer would be tendered upon receipt of his certifications.

18. Plaintiff SHEPS, Ms. Grieco, and Mr. Grieco all came to an agreement that Plaintiff would need three weeks before he began work for Defendant AQUEDUCT: one week to study and pass the required certification tests, and two weeks to give adequate notice to Plaintiff's former employer, Tristate Air Conditioning.

19. On or about February 26, 2022, Plaintiff SHEPS passed the EPA 608 "Core," (or "Universal"), Type I and Type II Section certification exams.

20. On or about February 28, 2022, Plaintiff SHEPS emailed Mr. Grieco and Ms. Grieco to inform them that he passed the required exams.

21. Ms. Grieco, in a phone call later that night, expressed that she was happy and impressed that Plaintiff SHEPS could pass the exams in such a short period of time.

22. Plaintiff SHEPS was informed by Ms. Grieco that his start date was set for March 14, 2022, his starting salary would be $40.00 per hour, and he would receive a sign-on bonus of

$2,000.00.

23. The sign-on bonus would be paid out in the following manner: $500 immediately, $500 at six months, and the remaining $1,000 at one year.

24. Plaintiff SHEPS was also informed that he would need to take a drug test, which could be scheduled on company time and was required as soon as possible after beginning work.

25. On or about March 2, 2022, Plaintiff SHEPS gave his notice of resignation to his former employer.

26. Plaintiff SHEPS' former employer was reluctant to lose Plaintiff as an employee and asked him what he would need to stay with them.

27. However, Plaintiff SHEPS turned down their offer because he was expecting better pay with Defendant AQUEDUCT.

28. On or about March 14, 2022, Plaintiff SHEPS began working for Defendant AQUEDUCT at their 115 Wall St., Valhalla, NY location as a HVAC Installer earning approximately $40.00 per hour.

29. On his first day, March 14, Plaintiff SHEPS informed Office Administrator, Cheryl Landry, and Brandon, Head of Service, that he is Jewish and Sabbath observant.

30. Plaintiff SHEPS explained to them that, as is required of his religious observation, he would need to leave early on Fridays for part of the year to prepare to begin observing at sunset.

31. Plaintiff SHEPS also explained that, during the winter months, especially when daylight savings is in effect, Sabbath begins much earlier than any other time of year, since the sun sets significantly earlier during that time, and this is the time period during which Plaintiff would need to leave early from work.

32. Plaintiff SHEPS made it clear that this accommodation would not be constant or year-round but was only needed during the time of year when the sun set earlier.

33. Plaintiff SHEPS then asked Ms. Landry if Defendant AQUEDUCT wished to set a plan for his religious accommodation at that time, but Ms. Landry responded that setting a plan could wait until that following Friday.

34. Plaintiff SHEPS also informed Ms. Landry, Ms. Grieco, and Brandon that he had a previously scheduled oral surgery appointment March 21, 2022, and Ms. Landry immediately gave him approval to leave early on that day.

35. During his onboarding process on March 14, Plaintiff SHEPS noticed that Ms. Landry was filing his onboarding paperwork for a plumbing position. When Plaintiff attempted to correct Ms. Landry and remind her that he was hired as an HVAC technician, she verbally assured him that he was hired as an HVAC technician.

36. Over the next few days, until approximately March 18, Plaintiff SHEPS reported to work as normal and was sent to work on mainly plumbing and service calls.

37. Ms. Landry asked Plaintiff SHEPS to record his start and end times via text message before his account for the company's clock-in app was set up. During this time, Plaintiff noticed that his workday typically finished at or before 3:00 p.m.

38. Upon returning to the office, Plaintiff SHEPS informed Brandon that, as he stated in his interview, he was not trained in plumbing or service.

39. Brandon responded that this was not an issue and that he could learn on the job.

40. On March 17, Plaintiff SHEPS scheduled his mandatory drug screening for the following day, March 18, at 8:15 a.m.

41. At approximately 8:02 a.m. on Friday, March 18, Plaintiff SHEPS informed Defendant

AQUEDUCT via Google Hangout that Sabbath that week began at 6:45p.m., and that he would need to leave work that day at 3:45 p.m. Upon information and belief, Mr. Grieco, Ms. Grieco, Ms. Landry, Dan Grieco, Terri McCann-Grieco, Derek Grieco, and Shevon Dixon, Head of Scheduling, all had access to Plaintiff SHEPS' Google Hangout chat.

42. Brandon then informed Plaintiff SHEPS that he had to cancel his drug screening for that day, despite Plaintiff's protests that he had been told it was mandatory to complete as soon as possible.

43. At approximately 8:30 a.m., Plaintiff SHEPS rescheduled his drug screening with Ms. Grieco for the following Friday, March 25.

44. At approximately 10:12 a.m., Ms. Landry contacted Plaintiff SHEPS via Google Hangout, responding to his 8:02 a.m. message, asking, "For our knowledge, how much earlier do you need to be home before sundown each Sabbath? A half hour, 1 hour, 2 hours. Knowing this will help with future scheduling."

45. Plaintiff SHEPS responded that he needed to leave three hours before sundown, to which Ms. Landry replied, "Wow. So in the winter you are basically working ½ days on Friday correct?"

46. Plaintiff SHEPS replied that, if he was able to start at 7 a.m., he would be able to work 7–8-hour-days even on the earliest week. Ms. Landry responded, "So noted."

47. Plaintiff SHEPS suggested a three-hour timeframe because that was the standard timeframe he had been allowed when he asked to leave work early while working with the majority of his previous employers. The other standard option he had been given in the past was to pick a set time, typically the earliest Sabbath of the year, to use as the time he would leave Friday of every week.

48. Plaintiff SHEPS completed his assigned work that day at 3:20 p.m., so his request for accommodations to leave at 3:45 p.m. for Sabbath ended up being unnecessary.

49. Then, on March 21, Ms. Landry informed Plaintiff SHEPS that his uniforms were ready for pickup at the office.

50. The following day, when Plaintiff SHEPS arrived at the office to pick up his uniforms, Ms. Landry instructed him that he should "just take what [he] needs for now" and that he "didn't want to risk losing anything."

51. At the end of the day, Ms. Grieco told Plaintiff SHEPS he should report to the office at 9:30 a.m. the following day, instead of the usual 7:00/8:00 a.m. start time. Plaintiff was given no further information.

52. On March 23, Plaintiff SHEPS reported to the Defendant's main office at 9:20 a.m. and waited thirty minutes before he was invited to meet with Manny and Brandon.

53. During this meeting, Manny informed Plaintiff SHEPS that he was terminated from his employment with his Defendant effective immediately.

54. Plaintiff SHEPS waited for Manny to elaborate but received no explanation. When he asked why he was being terminated from his employment, Manny responded, "Your work shows that you do not have the necessary plumbing experience."

55. Plaintiff SHEPS stated that he was hired as an HVAC Installer, not a plumber. He reiterated, as he had several times in the past, that he did not have experience installing boilers or water heaters.

56. Brandon responded that boilers and water heaters are "part of HVAC."

57. However, according to Plaintiff SHEPS' knowledge and extensive experience in his field, while boiler and water heater installation falls under the general "HVAC" umbrella, these

7

items are typically handled by plumbers.

58. Furthermore, upon information and belief, on AQUEDUCT's Indeed.com job listings page Defendant AQUEDUCT listed "HVAC Technician" and "HVAC Installer" separately from plumbing positions (i.e., "Plumbers Helper, Plumber, Plumbing Service Technician.")

59. Plaintiff SHEPS was extremely shocked and distressed, and reiterated to Manny and Brandon that he had left a salaried position for the position with Defendant, recently had his first child, and was told he would be trained on the job for the exact qualifications they accused him of lacking. However, Manny and Brandon did not respond.

60. Manny instructed Plaintiff SHEPS to return all company property immediately.

61. Plaintiff SHEPS, still shaken from this conversation, made the round trip to his home and back to Defendant's office in order to return the company documents and merchandise he had been given, including the uniforms he was instructed to pick up the day before.

62. When he returned to the office, Plaintiff SHEPS asked Mr. Grieco and Ms. Grieco about severance or unemployment, and for his sign-on bonus of $500, as promised.

63. Mr. Grieco and Ms. Grieco appeared surprised and reluctantly gave Plaintiff SHEPS his sign-on bonus.

64. Upon information and belief, Plaintiff SHEPS had received no criticisms of his work on service calls or any negative feedback on his timeliness or punctuality.

65. Based on the above, Plaintiff SHEPS believes that he was terminated from his employment on the basis of his religion.

66. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

67. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will

continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced emotional and physical distress.

68. As a result of the acts and conduct complained of herein, Plaintiff has also suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

69. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

70. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

71. As such, Plaintiff demands punitive damages as against Defendant.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

73. 42 USC 2000e-2(a), states in relevant part:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, **religion**, sex, or national origin . . .

74. Defendant engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiff because of his **religion (Jewish).**

## AS A SECOND CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

9

this Complaint.

76. Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, **creed**, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

77. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his **creed (Jewish).**

## JURY DEMAND

78. Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII and the NYSHRL, and, in that Defendant discriminated against Plaintiff on the basis of his religion (Jewish).

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.	Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
       February 21, 2023

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

_____
Dorina Cela, Esq.
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901-2107
dcela@tpglaws.com

# EXHIBIT A

| EEOC Form 161-B (01/2022) | **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** |
|---|---|

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Matthew Sheps**<br>**40 Memorial Highway 2**<br>**New Rochelle, NY 10801** | From: | **New York District Office**<br>**33 Whitehall St, 5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2023-00965** | **ARACELY FRANCOIS,**<br>**Investigator** | **929-506-5281** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

    The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA):* You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Timothy Riera
01/17/2023

Enclosures(s)

**Timothy Riera**
**Acting District Director**

cc:

**Dorina Cela**
**dcela@tpglaws.com**

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*